IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CT-03128-M-RJ

| | |
|---|---|
| LUIS ANTONIO ROSADO, Jr., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| JOHN GRAY, et al., ) | |
| ) | |
| Defendants. ) | |

This cause is before the court on plaintiff's various motions seeking summary judgment, Mot. [D.E. 48], judgment on the pleadings, Mot. [D.E. 56], to strike, Mot. [D.E. 67], and to compel, Mot. [D.E. 70], and defendant's motion for summary judgment, Mot. [D.E. 73]. As discussed below, the court denies plaintiff's motions and grants defendant's motion.

Relevant Procedural History:

On April 21, 2023, Luis Antonio Rosado, Jr. ("plaintiff"), a state inmate proceeding *pro se* and without prepayment of fees, filed a complaint under 42 U.S.C. § 1983. See [D.E. 1, 2, 7].

On November 6, 2023, the court conducted its initial review of the complaint, allowed an Eighth Amendment claim to proceed in part against Correctional Officer Simmons ("Simmons" or "defendant") as to the purported groping of plaintiff's genitals through the food-slot trapdoor of plaintiff's cell, but dismissed the remaining claims and defendants. See Order [D.E. 11].

On November 7, 2023, pursuant to the court's Standing Order 14-SO-02, the court issued a notice of lawsuit and request to waive service of a summons as to Simmons. [D.E. 12].

On December 14, 2023, plaintiff moved to appoint counsel. Mot. [D.E. 13].

On January 8, 2024, the North Carolina Department of Adult Correction ("DAC"), by and through the North Carolina Attorney General's Office, timely informed the court that it was unable to procure a waiver of service as to Simmons and provided under seal Simmons' last known address. [D.E. 14]. Also on that date, plaintiff moved for default judgment. Mot. [D.E. 15].

On January 9, 2024, summons issued as to Simmons. [D.E. 16].

On January 10, 2024, the court denied plaintiff's motion to appoint counsel and denied as premature plaintiff's motion for default judgment. Order [D.E. 17].

On January 18, 2024, plaintiff filed a motion seeking reconsideration of that part of the court's prior order that denied his motion for default judgement. Mot. [D.E. 18].

On January 19, 2024, the court denied the motion for reconsideration. Order [D.E. 19].

On January 29, 2024, plaintiff moved for leave to amend the complaint. Mot. [D.E. 22].

On January 30, 2024, the court granted the motion for leave to amend. Order [D.E. 23].

On February 15, 2024, plaintiff filed an amended complaint. Am. Compl. [D.E. 24].

On February 16, 2024, the court allowed the amended complaint to proceed as to plaintiff's reiterated claim that Simmons groped plaintiff's genitals through the cell food-slot trapdoor, but dismissed other claims and defendants, see Order [D.E. 25], and reissued summons as to Simmons, see [D.E. 28].

On February 23, 2024, plaintiff moved for entry of default. Mot. [D.E. 27].

On February 27, 2024, summons was returned executed as to defendant Simmons, with service on February 26, 2024, and an answer due on March 18, 2024. See [D.E. 28].

On March 8, 2024, plaintiff again moved for entry of default. Mot. [D.E. 29].

On March 18, 2024, defendant timely answered the amended complaint, Answer [D.E. 31].

2

On March 19, 2024, the court entered a scheduling order. Order [D.E. 32].

On April 4, 2024, plaintiff filed interrogatories, a request for production of documents, and a request for admissions. See [D.E. 33].

On April 8, 2024, the court denied the motions for entry of default. Order [D.E. 34].

On May 1, 2024, the court allowed defendant an extension of time until June 3, 2024, to respond to plaintiff's discovery requests. Order [D.E. 37].

On July 8, 2024, plaintiff moved for discovery sanctions and default. Mot. [D.E. 40].

On September 6, 2024, plaintiff moved to depose non-party witnesses. Mot. [D.E. 44].

On September 12, 2024, plaintiff moved for discovery-related sanctions. Mot. [D.E. 46].

On September 19, 2024, plaintiff moved for summary judgment. Mot. [D.E. 48].

On October 11, 2024, plaintiff moved for judgment on the pleadings. Mot. [D.E. 56].

On October 22, 2024, plaintiff moved to dismiss defendant's claims. Mot. [D.E. 59].

On November 4, 2024, plaintiff moved for an injunction. Mot. [D.E. 65]; Mot. [D.E. 66].

On November 8, 2024, plaintiff filed the instant motion to strike. Mot. [D.E. 67].

On November 18, 2024, plaintiff filed the instant motion to compel. Mot. [D.E. 70].

On December 18, 2024, defendant moved for summary judgment, Mot. [D.E. 73], and filed a statement of material facts [D.E. 74], an appendix [D.E. 75], and a memorandum [D.E. 76].

Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam) ("Roseboro"), the court notified plaintiff about defendant's motion for summary judgment, the consequences of failing to respond, and the response deadline. [D.E. 77].

On January 7, 2025, plaintiff moved for an extension of time to file a response to defendant's motion for summary judgment and for copies. Mot. [D.E. 78].

On January 9, 2025, the court: denied as moot the July 8, 2024, motion for discovery-related sanctions and default; denied the September 6, 2024, motion to depose non-party witnesses; denied the September 12, 2024, motion for discovery-related sanctions; denied the October 22, 2024, motion for "dismissal of defendant claims [sic]"; denied the October 15 and November 4, 2024, motions for injunctive relief; and granted in part the January 7, 2025, motion as to the request for an extension of time, but denied this motion as to the request for copies. See Order [D.E. 79].

On January 14, 2024, plaintiff filed a response in opposition to defendant's motion for summary judgment, Pl.'s Resp. [D.E. 80], with an appendix [D.E. 80-1], as well as exhibits, a declaration, and a memorandum in support, see [D.E. 80-2].

On January 28, 2024, defendant filed a reply. Def.'s Reply [D.E. 82].

## Plaintiff's Motion to Strike:

In support of his motion to strike, plaintiff cites Federal Rule of Civil Procedure 12(f) and argues, *inter alia*, that: defendant failed to "state a sufficient reason for an extension of time"; and defendant's October 24, 2024, motion to extend time, which mentions "gathering witnessed downloaded media, pictures, and videos for review of the court," suggests "spoliation" because defendant's prior response to his interrogatories stated that there was no available video footage. See Mot. [D.E. 67] at 2–3. For relief, plaintiff seeks, *inter alia*, sanctions for "spoliation," and an order striking both defendant's motions for an extension of time and the court's prior orders granting these motions. Id. at 4–5. Defendant opposes the motion. See [D.E. 68].

To the extent plaintiff seeks reconsideration of the court's prior orders granting defendant an extension of time to file dispositive motions and respond to plaintiff's motion for summary judgment, he fails to show any clear error causing manifest injustice in these prior orders. See

4

American Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514–15 (4th Cir. 2003) ("Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment[,]" but are "committed to the discretion of the district court."); see also Colleton Preparatory Academy v. Hoover Universal, 616 F.3d 413, 417 (4th Cir. 2010) (noting the U.S. Court of Appeals for the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits."). Thus, the court DENIES this aspect of the motion [D.E. 67].

Turning to plaintiff's sanctions request, "Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001) (citation omitted). "The imposition of a sanction . . . for spoliation of evidence is an inherent power of federal courts . . . and the decision to impose such a sanction is governed by federal law." Hodge v. Wal-Mart Stores, Inc., 360 F.3d 446, 449 (4th Cir. 2004) (citation omitted). "Moreover, spoliation is not a substantive claim or defense but a 'rule of evidence,' and thus is 'administered at the discretion of the trial court.'" Id. at 450 (citation omitted).

The court looks to the following three factors to determine whether a sanction is warranted: (1) the relevance of the evidence to the litigation; (2) whether the spoliating party had a duty to preserve the evidence; and (3) whether the spoliating party acted "with the requisite level of intent, which varies depending on the sanction imposed." Nucor Corp. v. Bell, 251 F.R.D. 191, 194 (D.S.C. 2008) (citations omitted). The court may draw an "adverse inference against a party whose intentional conduct causes not just the destruction of evidence, . . . but also against one who fails to preserve or produce evidence[.]" Hodge, 360 F.3d at 450 (citations omitted). However,

5

"such an inference 'cannot be drawn merely from [the] negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction.'" Id. (citations omitted).

Here, the filings reflect plaintiff's request for production of "all videos" reviewed by Maury C.I. and the DAC "on the date of incidents (Locations Gray Unit F Block, Gray Unit Rec Yard Gray Unit Control camera)." See [D.E. 47-1] at 5, ¶14. Defendant responded, in relevant part: "There are no video images to produce." Id.

As discussed below, defendant's motion for summary judgment is granted on failure-to-exhaust grounds, but the "spoliation" argument involves evidence going to the merits of the claims, not exhaustion. Thus, after review, the court finds no showing that an adverse inference is warranted, cf. Nucor 251 F.R.D. at 202, and DENIES this aspect of the motion to strike [D.E. 67].

## Plaintiff's Motion to Compel:

In support of this motion to compel, plaintiff states that he requested documents signed by Unit Manager Arthur, all video footage, and deposition questions on non-party witnesses. See Mot. [D.E. 70] at 2. Plaintiff re-asserts "spoliation" claims and contends that defendant provided "inadequate discovery." See id. at 2–3. For relief, plaintiff seeks, *inter alia*: an order compelling defendant "to disclose materials, media pictures, and videos requested"; "spoliation" sanctions; that his motion for summary judgment be granted; and attorney's fees. See id.

Defendant opposes the motion, reiterating there is no video evidence to produce and arguing, *inter alia*, that defendant's prior discovery responses were adequate. See [D.E. 71].

After review, the court finds that defendant adequately responded to these discovery requests and has made a particularized showing why discovery should be denied. Mainstreet

6

Collection, Inc. v. Kirklands, Inc., 270 F.R.D. 238, 241 (E.D.N.C. 2010). Accordingly, the court, in its discretion, DENIES this motion [D.E. 70]. See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc., 43 F.3d 922, 929 (4th Cir. 1995).

To the extent this motion instead sounds under Federal Rule of Civil Procedure 56(d), defendant's motion for summary judgment is granted on failure-to-exhaust grounds, as discussed below, but plaintiff seeks production of evidence that goes to the merits of his claims, not administrative exhaustion. Accordingly, the court also DENIES this motion [D.E. 70] because it fails to satisfy Rule 56(d) requirements. See, e.g., Sanders v. Callender, No. CV DKC 17-1721, 2019 WL 3717868, at *3 (D. Md. Aug. 6, 2019) ("A non-moving party's Rule 56(d) request for discovery is properly denied where 'the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment.'" (quoting Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006))).

### Plaintiff's Motion for Judgment on the Pleadings:

Next, Federal Rule of Civil Procedure 12(c) provides that, "after the pleadings are closed but within such time as to not delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Reviewing a Rule 12(c) motion, the court construes the allegations in the complaint in the light most favorable to the non-moving party. Bruce v. Riddle, 631 F.2d 272, 273 (4th Cir. 1980). "The test applicable for judgment on the pleadings is whether or not, when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law." Smith v. McDonald, 562 F. Supp. 829, 842 (M.D.N.C. 1983) (citation omitted), aff'd, 737 F.2d 427 (4th Cir. 1984), aff'd, 472 U.S. 479 (1985).

7

"A Rule 12(c) motion is designed to dispose of cases when the material facts are not in dispute and the court can judge the case on its merits by considering the pleadings and any attachments to the pleadings and materials referenced, which are incorporated into the pleadings by Rule 10(c)." Preston v. Leake, 629 F. Supp. 2d 517, 521 (E.D.N.C. 2009) (citation omitted). "In general, such motions are disfavored unless the movant clearly establishes that no material fact is disputed and that movant is entitled to judgment as a matter of law." Id. (citation omitted).

Here, defendant's answer explicitly denies plaintiff's claims, Answer [D.E. 31] at 2, and, in the light most favorable to defendant as the non-moving party, genuine issues of material fact remain. Thus, the court DENIES plaintiff's motion for judgment on the pleadings [D.E. 56].

<u>The Parties' Cross Motions for Summary Judgement:</u>

1) <u>Arguments</u>:

In support of his motion for summary judgment, plaintiff argues that defendant withheld evidence, is being evasive, and violated his constitutional rights. See generally Mot. [D.E. 48].

In support of his own motion for summary judgment, and in opposition to plaintiff's motion for summary judgment, defendant argues, *inter alia*, that plaintiff failed to exhaust administrative remedies as to the surviving claim before filing this action. See Def.'s Mem. [D.E. 76].

In his response, plaintiff argues, *inter alia*, that defendant is withholding video evidence, documentary evidence is "fraudulent," and that his claim is exhausted. See Pl.'s Resp. [D.E. 80].

In reply, defendant reiterates failure-to-exhaust arguments. Def.'s Reply [D.E. 82].

2) <u>Legal Standard</u>:

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to

8

judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A court reviewing a motion for summary judgment should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

"When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Rules of Civil Procedure." Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 354 (4th Cir. 2011).

3) Discussion:

The Prison Litigation Reform Act ("PLRA") states: "No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Jones v. Bock, 549 U.S. 199, 211 (2007) ("[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." (citation omitted)); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory." (citation omitted)); see also Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all

9

inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.").

Successful exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford, 548 U.S. at 90 (citation, alteration, and internal quotation marks omitted).

PLRA administrative exhaustion, however, is mandatory only if the grievance procedure is "available." Ross v. Blake, 578 U.S. 632, 643–44 (2016) (finding grievance procedure "unavailable" when: 1) it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; 2) it is "so opaque that it becomes, practically speaking, incapable of use"; and 3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."); see Griffin v. Bryant, 56 F.4th 328, 335–39 (4th Cir. 2022); Moss v. Harwood, 19 F.4th 614, 621–23 (4th Cir. 2021); Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Failure to exhaust administrative remedies is an affirmative defense that a defendant generally must plead and prove. See Jones, 549 U.S. at 216–17; Wilcox v. Brown, 877 F.3d 161, 167 (4th Cir. 2017); Custis v. Davis, 851 F.3d 358, 361–63 (4th Cir. 2017).

"The main purpose of the PLRA's exhaustion requirement is 'allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record.'" Wilcox, 877 F.3d at 167 n.4 (citation omitted). "To satisfy the exhaustion requirement, grievances generally need only be sufficient to 'alert[ ] the prison to the nature of the wrong for which redress is sought.'" Id. (citation omitted).

Nevertheless, "if the grievance fails to give prison authorities fair notice of, and the opportunity to address, the problem that will later form the basis of the suit against that defendant, dismissal of that defendant is appropriate." Davidson v. Davis, No. 3:13-CV-590-FDW, 2015 WL 996629, at *3 (W.D.N.C. Mar. 6, 2015) (citing Johnson v. Johnson, 385 F.3d 503, 516–17 (5th Cir. 2004)).

The DAC, then known as the Department of Public Safety ("DPS"), utilizes a three-step inmate grievance Administrative Remedy Procedure ("ARP"), see Moore, 517 F.3d at 721–22, and the record entails ten grievances fully exhausted by plaintiff via the ARP from January 1, 2019, to January 1, 2024, Def.'s App., Ex. 3 [D.E. 75-3] at 2–4 (declaration of Inmate Grievance Resolution Board Executive Director Kimberly D. Grande); see id. at 5–77 (collected grievances).

Plaintiff argues only two of his exhausted grievances – dated November 13 and 23, 2020 – are relevant to this action. Pl.'s Resp. [D.E. 80] at 3; see Pl.'s Ex. 5, [D.E. 80-2] at 37–46.

In his November 13, 2020, grievance statement, plaintiff writes:

> On 11/13/2020 at 9am and 2pm also at 5:45-6:00 p.m. Officer Simmons continuously comes into F Block after I put in my PREA [Prison Rape Elimination Act claim] against him. He even went to the extent to walk to the cage and whisper to me "man you mad all I did was cop a feel no harm man." I told Sgt. Haglier at 2pm when they came into the [cellblock] and he disregarded my grievance (verbal). The officer is harassing me even went to the extent of having [an] officer who is homosexual pat me down when I came out for rec at 6am. This is sexual harassment and neglect. I'm Level 3 mental health and I'm diagnosed as PTSD and I'm suffering from Trauma where this man grabbed my privates.

Pl.'s Ex. 5, [D.E. 80-2] at 42–43.

As to what remedy would resolve this November 13, 2020, grievance, plaintiff writes:

> $250,000 I will notify my lawyer about the harassment and also the neglect from staff from keeping this abomination of DPS (Correctional Officer Simmons) away from me. Also will be filing a lawsuit on the PREA and neglect due to fact staff willing know what took place and didn't keep him away [sic]."

Id.

11

In his November 23, 2020, grievance statement, plaintiff writes:

> On 11-23-2020[,] around 8-9 AM[,] Officer Simmons & Officer Holder threatened to retaliate over my PREA on Simmons. He threaten to tamper with my food and throw bodily fluids on me. Then[,] at approximately 11:17 to 11:20 AM[,] I asked for a grievance from Officer Holder[,] he held up his middle finger and said he got this for me and will stick it up my ass when he catch me. He also said I was lucky he & Simmons couldn't get ahold of me together. I fear for my Safety yet again. Violation on my Civil Rights.

Id. at 38.

As to what remedy would resolve this November 23, 2020, grievance, plaintiff writes: "$250,000, keep Officer Holder away from me. Move Officers Holder & Simmons on Lower Red. Will be filing my lawsuit regarding the lack of sincerity for my wellbeing and health." Id.

The record includes an Incident Report for a PREA claim by plaintiff against defendant – premised on the November 13 grievance and initiated on November 17, 2020 – stating, *inter alia*:

> On 11-17-20[,] at approximately 1000 hours[,] Administrative Associate II Mrs. A. Rhodes received a grievance from [plaintiff] in which he alleged that [defendant] sexually abused him. The allegation was reported to PREA Compliance Manager Lt. R. Summers and a PREA investigation was started . . .
>
> A preliminary review report was completed and is attached to this package.
>
> On 12-14-20[,] I interviewed [plaintiff] and afforded him an opportunity to write a statement concerning this incident and he refused to do so and stated he wanted to use his grievance statement. [Plaintiff] writes in his grievance that[,] on 11-13-20 at 0900 hours, 1400 hours, and between 1745-1800 hours[,] that [defendant] entered his assigned pod after he had been advised not to enter the pod due to [plaintiff] making a previous PREA complaint against him. [Plaintiff] further alleged that during his assigned recreation time, at approximately 0600 hours, that [defendant] had a homosexual officer search him and that he had grabbed his privates, but he could not identify the staff member that had searched him, but stated it was not [defendant]. [Plaintiff] alleged that while he was in his recreation cell that [defendant] approached his recreation cell and stated: "man you mad all I did was cop a feel no harm man." [Plaintiff] also alleged that at 1400 hours he notified Sergeant Haigler that [defendant] had been in his cell pod that day. . . .

12

[Plaintiff] was not searched[,] and telephone records were not requested due to the allegation. Video footage was requested and made available for the times of 0900, 1400 and between 1745 to 1899 hours and does show [defendant] in Gray unit F-pod, but does not show him make contact with [plaintiff]. A statement was obtained from Lt. Summers stating there is no video available to the time of 0600 hours when [plaintiff] stated that he was out of his cell for recreation and when he alleged that [defendant] had talked to him.

On 12-17-20[,] I interviewed Sgt. Haigler and obtained a written statement from him, in which, he stated that he did talk to [plaintiff] on the date of the incident[,] but he had not been advised that [defendant] could not enter F-pod. Sgt. Haigler also stated that [plaintiff] did not make any allegations, to him, that staff had touched him in an inappropriate way[,] so he did not have him medically screened.

On 12-21-20[,] I interviewed [defendant] and obtained a written statement from him, in which, he stated that on the date of [plaintiff's] allegation he had not been advised of any PREA allegations made by [plaintiff] against him and he had not been advised not to have contact with [plaintiff]. [Defendant] also stated that [plaintiff] did come out for inside recreation at approximately 0600 hours, and that [defendant] and C/O Williams had removed [plaintiff] from his cell since he was a RHCP offender. [Defendant] stated he conducted a pat/frisk search of [plaintiff] and that he did not have another staff [sic] search [plaintiff]. [Defendant] also stated that at no time did he grab or grope [plaintiff] nor did [defendant] state to [plaintiff]: "man you mad all I did was cop a feel no harm man." [Defendant] further stated that at the times of 0900, 1400 and 1745-1800 hours he had no contact with [plaintiff].

I also interviewed C/O Williams and obtained a written statement from him, in which, he stated that he and [defendant] pulled [plaintiff] out of his cell for recreation[,] and he maintained control of [plaintiff] as [defendant] conducted a pat/frisk search of [plaintiff]. C/O Williams also stated that at no time did he see, or hear, [defendant] make any sexual comments to [plaintiff], nor touch him in an inappropriate way.

The PREA Incident Detail Report was reviewed[,] and it showed that [plaintiff] has not been a participant in any previous PREA allegations against [defendant]. Local law enforcement was not noticed involved [sic] in this incident.

Based on the preponderance of the evidence[,] I find the allegation to be unsubstantiated. . . .

See Def.'s App., Ex. 2A [D.E. 75-2] at 6–8 (Incident Report by Investigating Officer Arthur).

This PREA investigation, distilled, examined alleged events of November 13, 2020, including defendant's putative disregard of contact restrictions due to plaintiff's purported prior PREA complaint, defendant's alleged verbal harassment of plaintiff, and a pat-down search by a different, supposedly homosexual officer who touched plaintiff's "privates." See generally id.

Although plaintiff's November 13 and 23, 2020, grievances were exhausted, they did not give prison authorities fair notice of, and an opportunity to address, the surviving claim – that, in a separate incident, defendant groped his genitals through the cell food-slot trapdoor. Cf. Wilcox, 877 F.3d at 167 n.4. Thus, the surviving claim is unexhausted. See Moore, 517 F.3d at 729 (finding exhaustion of grievances as to inadequate medical treatment for a pancreatic condition and Hepatitis C did not exhaust claims as to inadequate medical treatment for gout, a condition not mentioned in any exhausted grievances); see also McClary v. Bradley, No. 5:17-CT-3089-FL, 2019 WL 4439474, at *2 (E.D.N.C. Sept. 16, 2019) ("Sexual assault by groping and verbal sexual harassment are different issues, and the exhaustion of administrative remedies doctrine requires that plaintiff exhaust administrative remedies with respect to the issue alleged in the complaint." (citations omitted)); Davidson, 2015 WL 996629, at *3 (dismissing failure to supervise claim where a grievance focused on excessive force but did not mention failure to supervise).

Although plaintiff declares that he "filed a PREA on [defendant] prior to November 2020 due to him reaching in my trap and groping me," Pl.'s Ex. 9, Pl.'s Decl. [D.E. 80-2] at 66 ¶3, the record instead reflects that the only PREA claim filed by plaintiff against defendant was the above-discussed PREA claim initiated on November 17, 2020, and that, during the investigation of that PREA claim, plaintiff declined to provide additional statements aside from his above November 13, 2020, grievance statement, Def.'s App., Ex. 2A [D.E. 75-2] at 6–9 (Incident Report); id. at 18

14

(PREA Incident Detail Report indicating two total PREA incidents for defendant while at Maury C.I. – the later addressing the above-discussed alleged Nov. 13, 2020, incident with plaintiff, and the earlier addressing an unrelated alleged Jan. 3, 2019, incident involving a different offender).

In support of his contention that defendant provided "fraudulent" documents, plaintiff cites to a memorandum from PREA Investigator Arthur ("Arthur") to Maury C.I. Warden John Herring. Pl.'s Resp. [D.E. 80] at 2–3. This memo, which is dated October 30, 2020, states that plaintiff gave a November 13, 2020, grievance to Administrative Associate II Mrs. A. Rhodes who initiated a PREA investigation against defendant. See Pl.'s Resp. Attach [D.E. 80-2] at 16. This memo notes Arthur's interview of plaintiff – which the memo also dates as October 30, 2020 – where plaintiff was asked to write a statement, but he told Arthur that he "wanted to use the statement that he had previously written on an inmate statement form." Id. This memo states that, during the interview, Arthur received the assistance of a PREA support person, Correctional Program Supervisor Ms. C. Pettway. See id. Plaintiff argues the putative October 30, 2020, dates listed on this memo shows "the lack of credibility of the evidence submitted" because the memo discusses "an incident that has yet to transpire (11/13/2020) [sic]." See Pl.'s Resp. [D.E. 80] at 2–3. However, the Incident Report – completed by Arthur on January 20, 2021 – and the Internal Investigation Report – signed by Arthur on December 21, 2020 – both state that Arthur interviewed plaintiff on December 14, 2020, not on October 30, 2020. See Pl.'s Resp. Attach [D.E. 80-2] at 9–13, 20–25. The record elsewhere reflects the December 14, 2020, signatures of plaintiff and Ms. Pettway on forms requesting PREA support services as to the November 13, 2020, incident. See Def.'s App., [D.E. 75-2] at 24–25. Considering these other aspects of the record, the October 30, 2020, dates listed on Arthur's memorandum appear to be mere typographical errors.

15

In short, plaintiff's self-serving claims – that defendant provided "fraudulent" documents and "the defense withheld" his alleged pre-November 2020 PREA claim against defendant, "which would show plaintiff did exhaust administrative remedies [sic]," see Pl.'s Resp. [D.E. 80] at 2, 3 – are uncorroborated, merely speculative inferences, see Reddy v. Buttar, 38 F.4th 393, 403 (4th Cir. 2022) (finding "unsupported claims of forgery" do not create issues of material fact); Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020) ("[C]onclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion." (citation omitted)); CTB, Inc. v. Hog Slat, Inc., 954 F.3d 647, 658 (4th Cir. 2020) (noting, "it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture," and "a party's self-serving opinion cannot, absent objective corroboration, defeat summary judgment" (citations omitted)); Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) ("neither '[u]nsupported speculation,' nor evidence that is 'merely colorable' or 'not significantly probative,' will suffice to defeat a motion for summary judgment" (internal citations omitted)); Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (noting a nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another" (citation omitted)).

Although plaintiff reiterates that defendant is responsible for "spoliation" of November 13, 2020, video evidence, and argues defendant's interrogatory response – stating defendant spoke to Captain Coley during the investigation, despite Coley not being named elsewhere in discovery documents – amounts to perjury, see Pl.'s Mem. [D.E. 80-2] at 68, 71, these arguments address the merits of the claim or defendant's credibility, but do not create issues of material fact as to whether plaintiff exhausted his available administrative remedies, see Anderson, 477 U.S. at 256.

To the extent plaintiff instead argues that merely filing a PREA claim itself satisfies the PLRA's exhaustion requirement, see Pl.'s Mem. [D.E. 80-2] at 70, he is incorrect, McClary v. Butler, No. 5:18-CV-98-FDW, 2019 WL 415336, at *2 (W.D.N.C. Feb. 1, 2019) (collecting cases finding that "initiation of an action under the PREA simply does not satisfy the requirements for exhaustion of administrative remedies under the PLRA"), aff'd, 773 F. App'x 148 (4th Cir. 2019); see Woodford, 548 U.S. at 93 ("the PLRA exhaustion requirement requires proper exhaustion").

Plaintiff further argues that, "for the sake of debate[,] if plaintiff has not exhausted the steps in the administrative remedy procedure, plaintiff has properly shown that the facility and grievance committee never find fault on staffs conduct which hinders any relief [sic]," and that, when he "attempted to address the issues on the grievance form provided," he "failed to obtain any remedy that was adequate." See Pl.'s Mem. [D.E. 80-2] at 70. Plaintiff, however, has not demonstrated that the ARP was "unavailable" to him within the meaning of Ross, 578 U.S. at 643–44; see id., 578 U.S. at 641 ("The PLRA's history (just like its text) thus refutes a 'special circumstances' exception to its rule of exhaustion."); Booth v. Churner, 532 U.S. 731, 741 & n.6 (2001) (noting, under the PLRA, exhaustion is required "regardless of the relief offered through administrative procedures," and that the Supreme Court "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise"); Moore, 517 F.3d at 725 (noting "a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are" (citations omitted)); see also Graham v. Gentry, 413 Fed. App'x 660, 663 (4th Cir. 2011) (per curiam) (unpublished) (noting plaintiff bears the burden of showing the unavailability of administrative remedies (citing Moore, 517 F.3d at 725)); cf. Griffin, 56 F.4th at 335–39.

17

Viewing the evidence and the reasonable inferences drawn therefrom in the light most favorable to plaintiff, Scott, 550 U.S. at 378, defendant has shown the absence of a genuine issue of material fact as to plaintiff's failure to exhaust administrative remedies for his surviving claim, Celotex, 477 U.S. at 325; see Jones, 549 U.S. at 216–17; Wilcox, 877 F.3d at 167, but plaintiff has not shown the ARP was "unavailable," cf. Ross, 578 U.S. at 643–44; Matsushita, 475 U.S. at 587.

Thus, defendant is entitled to summary judgment, Anderson, 477 U.S. at 249; see Jones, 549 U.S. at 211, the action is dismissed without prejudice for failure to exhaust administrative remedies as to the surviving claim, Moss, 19 F.4th at 623 n.3 (4th Cir. 2021) (collecting cases), and, as the court need not reach the merits of unexhausted claims, plaintiff's motion for summary judgment is denied as moot, see Tart v. Hovis, No. 5:17-CT-3252-BO, 2020 WL 465325, at *2 (E.D.N.C. Jan. 28, 2020), aff'd, 811 F. App'x 844 (4th Cir. 2020) (per curiam) (unpublished).

## Conclusion:

For the reasons discussed above, the court: DENIES AS MOOT plaintiff's motion for summary judgment [D.E. 48]; DENIES plaintiff's motion for judgment on the pleadings [D.E. 56]; DENIES plaintiff's motion to strike [D.E. 67]; DENIES plaintiff's motion to compel [D.E. 70]; GRANTS defendant's motion for summary judgment [D.E. 73]; DISMISSES WITHOUT PREJUDICE the action pursuant to plaintiff's failure to exhaust administrative remedies as to his surviving claim; and DIRECTS the clerk to close the case.

SO ORDERED this 5th day of August, 2025.

Richard E Myers II
RICHARD E. MYERS II
Chief United States District Judge